IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

vs.                                                                      NO.  CR 05-1329 RB

**ENRIQUE CHAVARRIA,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** came before the Court on Defendant Chavarria's Motion to Suppress, filed on July 19, 2005.  On September 8, 2005, I held a hearing, received evidence, and heard arguments. Having considered the briefs, evidence, arguments of counsel, and being otherwise fully advised, I find that this motion should be denied.

**I.  Facts.**

      On April 8, 2005, at approximately 9:50 p.m., Deputy Raul Valderaz of the Chaves County Sheriff's Office was on patrol when he observed a 1978, green, single-cab, Chevrolet truck at the intersection of Second and Kansas Streets in Roswell, New Mexico.  Deputy Valderaz observed the truck fail to yield after a stop and veer to the left to avoid a collision.  Deputy Valderaz engaged his emergency equipment and stopped the truck under a street light near the intersection of Third and Washington Streets.

      Deputy Valderaz parked his patrol car about ten feet behind the truck, and directed the spot

light and take down lights[1] on the patrol car at the truck. Deputy Valderaz exited the patrol car and approached the driver of the truck. The driver, who was alone in the truck, identified himself as Enrique Chavarria.

Deputy Valderaz noticed that Chavarria was acting extremely nervous. When Deputy Valderaz asked for his driver's license, Chavarria's hands were shaking uncontrollably. Chavarria produced an ID card and stated that he did not have a driver's license. Deputy Valderaz asked for proof of insurance. Chavarria was so nervous that he passed the insurance card several times as he flipped through documents. Deputy Valderaz told Chavarria not to be so nervous because he would probably just cite him for not having a driver's license.

Deputy Valderaz returned to his patrol car to write out the citation. Due to the street light, spot light, and take down lights, Deputy Valderaz could see clearly inside the truck. Deputy Valderaz noticed that Chavarria was making furtive movements inside the truck, as if he were reaching for something to his right side. Chavarria kept looking back at Deputy Valderaz in a nervous manner. The nervous behavior caused Deputy Valderaz to become concerned for his own safety and he called for back up.

While Deputy Valderaz was writing the citation, Deputy Moore arrived as back up. Deputy Valderaz advised Deputy Moore about Chavarria's nervous behavior. Deputy Moore approached Chavarria's vehicle on the passenger side and stopped just behind the cab of the truck. Deputy Moore observed Chavarria looking back over Chavarria's shoulder at Deputy Valderaz in a nervous manner, and reaching over to the right.

Deputy Valderaz approached Chavarria on the driver's side of the truck and asked Chavarria

---

[1] Take down lights are clear lights on the front of the light bar on the roof of a patrol car.

to step out of the truck. This request was based on safety concerns. After escorting Chavarria to the front of his patrol car, Deputy Valderaz began explaining the citation to Chavarria. As Deputy Valderaz was explaining the citation, Deputy Moore moved up along the passenger side of the truck, and shined his flashlight through the passenger window. The street light, spot light, take down lights, and the flashlight beam allowed Deputy Moore to see clearly inside the cab.

On the floor in front of the passenger seat, Deputy Moore observed a blue Wal-Mart shopping bag. The bag was cut down to about a half of its original size and tied in a cross knot. The knot did not completely close the bag and left gaps. Through the gaps, Deputy Moore was able to see portions of several other blue shopping bags inside the outer bag. Deputy Moore was able to see that the individual bags contained white, powdery substances, one slightly darker than the others. Deputy Moore believed that the bags contained controlled substances. As he observed the bags, Deputy Moore heard Deputy Valderaz explaining the citation to Chavarria.

After seeing the bags, Deputy Moore walked over to where Deputy Valderaz was explaining the traffic citation to Chavarria. Deputy Moore was concerned because Chavarria placed his hands in his pockets. Deputy Moore asked Chavarria to keep his hands out of his pockets. Chavarria took his hands out of his pockets, but then put them back in. The fact that Chavarria put his hands back into his pockets after he was told to keep them out heightened Deputy Moore's safety concerns. Because of the heightened concern, Deputy Moore performed a pat down search. Deputy Moore found no weapons on Chavarria's person.

Deputy Valderaz returned Chavarria's ID and handed him the citation. As Chavarria signed the citation, Deputy Valderaz asked for consent to search the truck. Chavarria refused to give consent, explaining that the truck did not belong to him. Deputy Moore asked Chavarria if he knew

what a plain view search was. Chavarria replied that he did. Deputy Moore asked Deputy Valderaz to go and look at the passenger floorboard of the truck.

Deputy Valderaz proceeded to the passenger truck window and shined his flashlight onto the floor in front of the passenger seat. The street light, spot light, take down lights, and the flashlight beam allowed Deputy Valderaz to see clearly inside the cab. Deputy Valderaz saw the blue plastic Wal-Mart bag that was cut and tied in such a way that it revealed several smaller bundles inside that contained a white powdery substance. Deputy Valderaz noticed that the outer bag was tied in a knot that was consistent with narcotics trafficking.

Deputy Valderaz asked Deputy Moore to place Chavarria in custody and retrieved the bag from the passenger floorboard of the truck. A field test revealed that one of the substances in the bag was methamphetamine. A subsequent test revealed that the other substance was cocaine. The deputies conducted an inventory search and found a box of ammunition in the truck.

At the time he decided to stop Chavarria, Deputy Valderaz did not intend to issue a citation for failure to yield after stop. Deputy Valderaz intended to give Chavarria a verbal warning for the offense.

The indictment charged Chavarria with possession with intent to distribute more than 5 grams of methamphetamine, possession with intent to distribute less than 500 grams of cocaine, and aiding and abetting.

**II. Discussion.**

Chavarria moves to suppress all evidence on the grounds that the stop was illegal, the deputies exceeded the permissible scope of the stop, and that his arrest was unsupported by probable cause.

4

The Fourth Amendment prohibits unreasonable searches and seizures by the Government. U.S. CONST. amend. IV. Its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). A routine traffic stop constitutes an investigative detention and is examined under the principles announced in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).

The first inquiry under *Terry* is whether the stop was justified at its inception. "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). Deputy Valderaz observed Chavarria commit the traffic offense of failure to yield. Because Deputy Valderaz observed a traffic violation, the stop was justified at its inception.

Chavarria argues that the stop was impermissible because Deputy Valderaz intended to give Chavarria a verbal warning for the offense when he decided to stop him. Reasonable suspicion is an objective standard; the subjective intent of the officer is irrelevant so long as the circumstances, viewed objectively, justify that action. *Whren v. United States*, 517 U.S. 806, 813-14 (1996). Deputy Valderaz observed Chavarria commit a traffic offense. Chavarria cites no authority or evidence that would support an inference that Deputy Valderaz lacked the discretion to issue a verbal warning under these circumstances. Regardless of Deputy Valderaz's intent, the traffic stop was justified.

The second *Terry* inquiry is whether the officer's conduct during the detention was reasonably related in scope to the circumstances which justified the initial stop. *Terry*, 392 U.S. at 20. An officer may detain a motorist for questioning unrelated to the initial traffic stop if he has an objectively

5

reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning. *See United States v. Galindo-Gonzales*, 142 F.3d 1217, 1221 (10th Cir. 1998).

In this case, Chavarria refused consent to the search. Thus, the question is whether the deputies had an objectively reasonable and articulable suspicion of illegal activity that would justify prolonging the detention. *See United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2002). Deputy Moore observed the contraband before Deputy Valderaz finished explaining the citation for failure to carry a driver's license. Thus, the stop was not prolonged.

In the alternative, the scope of the stop was reasonable. Both deputies noticed that Chavarria was extremely nervous and made furtive motions to the right. Based on the nervous behavior, the deputies had a reasonable concern for their safety and lawfully asked Chavarria to step out of the truck. *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977); *United States v. Dennison*, 410 F.3d 1203, 1211 (10th Cir. 2005). Both deputies observed Chavarria reach to the right inside the truck. Based on the extreme nervousness, furtive movements and concerns for officer safety, it was reasonable to look inside the right side of the truck. After he saw the contraband and Chavarria did not comply with the request to keep his hands out of his pockets, it was reasonable for Deputy Moore to pat him down.

Chavarria relies on *Knowles v. Iowa*, 525 U.S. 113, 118 (1998), for the proposition that the deputies should have sent him on his way after issuing the citation. *Knowles* held that a search of an automobile conducted after a traffic stop resulting in a traffic citation violated the Fourth Amendment. *Id*., 525 U.S. at 117. *Knowles* is inapposite because Deputy Moore observed the contraband before Deputy Valderaz finished issuing the citation. *Knowles* reaffirmed the precept that

an officer may conduct a "pat down" search of a driver and the passenger compartment of a vehicle upon reasonable suspicion that an occupant is dangerous and may gain immediate control of a weapon. *Knowles v. Iowa*, 525 U.S. at 118. Due to the suspicious behavior and concerns for officer safety, it was reasonable for the deputies to look inside the truck. These factors, combined with the observation of contraband, justified the pat down of Chavarria and the visual check of the cab of the truck. The pat down and visual check did not dispel the concern that a weapon might be secreted in the cab. Both deputies observed a bag that appeared to contain illegal drugs. Under the totality of the circumstances, the arrest was supported by probable cause.

When he shined his flashlight and looked through the window, Deputy Moore observed a bag that contained smaller bundles that contained white, powdery substances. Deputy Valderaz observed that the bag was tied in a suspicious manner that was consistent with drug trafficking. An officer may seize evidence of a crime if it is in plain view, its incriminating character is immediately apparent, and the officer has a lawful right of access to the item. *Horton v. California*, 496 U.S. 128, 136-37 (1990). If an officer lawfully observes an object of incriminating character in plain view in a vehicle, that observation gives rise to probable cause to search the vehicle. *United States v. Sparks*, 291 F.3d 683, 692 (10th Cir. 2002). The plain view of the officer may be assisted by a flashlight without any infringement of Fourth Amendment rights. *Texas v. Brown*, 460 U.S. 730, 739-740 (1983) (plurality opinion); *United States v. Ortiz*, 63 F.3d 952, 954 (10th Cir. 1995). Once the deputies observed the contraband in the bag, there was probable cause to arrest Chavarria and search the truck.

**WHEREFORE,**

    **IT IS ORDERED** that Defendant's Motion to Suppress, filed on July 19, 2005, is **DENIED**.

*[signature: Robert Brack]*

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**